The STATE of Ohio, Appellee,

v.

BOWMAN, Appellant.

[Cite as *State v. Bowman,* 181 Ohio App.3d 407, 2009-Ohio-1281.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 08CA4.

Decided March 20, 2009.

408

Gary Nasal, Miami County Prosecuting Attorney, and James D. Bennett, Assistant Prosecuting Attorney, for appellee.

Jeremy M. Tomb and Scott A. Kelley, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Charles Bowman, owned and operated a used-car business in Troy. As is common among auto dealers, Bowman financed purchases of his auto inventory with "floor-plan loans." Under that form of loan, which is essentially a line of credit, the dealer who purchases a vehicle with loan proceeds promises to apply the proceeds from its sale to pay down the loan balance. When the payment is received, the lender releases its lien so that title to the vehicle can be transferred to its purchaser by the dealer.

{¶ 2} Bowman obtained floor-plan loans from several lenders, including Monroe Federal Savings & Loan Company ("Monroe Federal"). However, when some of his vehicles were sold, Bowman failed to repay his lenders. As a result, the lenders failed to release their liens, and titles to the vehicles Bowman sold could not be transferred to their purchasers. These failures soon led to the collapse of Bowman's business and criminal charges against him.

{¶ 3} Bowman was indicted and subsequently entered pleas of guilty to 60 felony offenses, including engaging in a pattern of corrupt activity, conspiracy to engage in a pattern of corrupt activity, tampering with records, theft by deception, forgery, and failure to deliver certificates of title. Bowman was sentenced to concurrent prison terms totaling six years and ordered to pay restitution to 22 persons who had purchased vehicles from him in an amount totaling $248,628.52.

{¶ 4} On direct appeal from Bowman's conviction and sentence, we affirmed the trial court's restitution order concerning seven purchasers, but reversed and remanded for a hearing on the restitution amounts ordered by the trial court for 15 others. *State v. Bowman*, Miami App. No. 06–CA–41, 2007-Ohio-6673, 2007 WL 4358469. On remand, the trial court held a hearing on the issue of restitution on February 15, 2008. On February 22, 2008, the court entered its judgment ordering Bowman to pay restitution to 17 victims in an amount totaling $268,141.50.

{¶ 5} Defendant Bowman appealed to this court from the trial court's restitution order.

## FIRST ASSIGNMENT OF ERROR

{¶ 6} "The trial court erred in ordering restitution in an amount that was not supported by competent, credible evidence in the record which supported the order of restitution to a reasonable degree of certainty."

{¶ 7} R.C. 2929.18(A)(1) authorizes a court that imposes a sentence on a felony offender to order a financial sanction in the form of restitution by the offender to the victim of his crimes "in an amount based on the victim's economic loss." That section further provides: "If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense."

{¶ 8} In our prior opinion in this case, *State v. Bowman*, Miami App. No. 06CA41, 2007-Ohio-6673, 2007 WL 4358469, at ¶ 5–7, we wrote:

{¶ 9} "This court has recently addressed the issue of restitution in *State v. Collins*, Montgomery App. Nos. 21510 and 21689, 2007-Ohio-5365, 2007 WL 2897808, wherein we stated as follows:

{¶ 10} " 'An order of restitution must be supported by competent, credible evidence in the record.' *State v. Warner* (1990), 55 Ohio St.3d 31, 69, 564 N.E.2d 18. 'It is well settled that there must be a due process ascertainment that the amount of restitution bears a reasonable relationship to the loss suffered.' *State v. Williams* (1986), 34 Ohio App.3d 33, 34, 516 N.E.2d 1270. 'A sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted.' *State v. Banks* (Aug. 19, 2005), Montgomery App. No. 20711, 2005-Ohio-4488[, 2005 WL 2077790]. 'Implicit in this principle is that the amount claimed must be established to a reasonable

degree of certainty before restitution can be ordered.' *State v. Golar* (October 31, 2003), Lake App. No. 2002–L–092, 2003-Ohio-5861[, 2003 WL 22470868].

{¶ 11} "A trial court abuses its discretion in ordering restitution in an amount that was not determined to bear a reasonable relationship to the actual loss suffered. *State v. Williams,* 34 Ohio App.3d 33[, 516 N.E.2d 1270]. Thus, we review the trial court's decision under an abuse of discretion standard. 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218[, 5 OBR 481], 450 N.E.2d 1140, quoting *State v. Adams* (1980), 62 Ohio St.2d 151[, 16 O.O.3d 169], 404 N.E.2d 144."

{¶ 12} Documentary and/or testimonial evidence must be introduced to demonstrate the victim's economic loss. *State v. Webb,* 173 Ohio App.3d 547, 2007-Ohio-5670, 879 N.E.2d 254; *State v. Marbury* (1995), 104 Ohio App.3d 179, 661 N.E.2d 271. Furthermore, because R.C. 2929.18(A)(1) states that the trial court's order of restitution shall not exceed the amount of economic loss suffered by the victim, and double recovery would amount to an impermissible economic windfall for the victim, the evidence introduced to demonstrate the actual economic loss suffered by the victim must take account of any offsets to the victim's economic loss and any mitigation of damages in the form of compensation received for the loss from, for example, insurance, the Ohio Title Defect Rescission Fund, or civil judgments against the defendant. *State v. Martin* (2000), 140 Ohio App.3d 326, 747 N.E.2d 318; *State v. Christy,* Wyandot App. No. 16–06–01, 2006-Ohio-4319, 2006 WL 2390273.

### Individual Consumers/Vehicle Purchasers

{¶ 13} None of the individual victims testified at the restitution hearing. Rather, the state presented the testimony of Billie Ray, an investigator for the Miami County Clerk of Courts Auto Title Department. State's Exhibit 1, a summary that Ray prepared, reflects the gross economic losses suffered by consumers who purchased automobiles from defendant. For each victim, that document lists the "purchase price," which Ray testified is based upon bills of sale, the "warranty price," which Ray testified is based upon copies of warranty sales orders, and the "temporary tag amount," the cost of a temporary license, which Ray testified is based upon information he obtained from the deputy registrar's office. None of the bills of sale or other receipts used to prepare the summary were introduced into evidence.

{¶ 14} The state also introduced Exhibit 3, a copy of a default judgment entered in favor of the Ohio Attorney General against defendant on behalf of the Ohio Title Defect Rescission Fund. That fund reimbursed a total of $78,822.85 to

some of the purchasers injured by defendant's failure to transfer titles as required by law.

{¶ 15} Ray also testified concerning the amount of restitution each of the victims in State's Exhibit 1 received from the Ohio Title Defect Rescission Fund, and that certain of those victims had been able to obtain a title to their vehicle. The trial court took account of that testimony in its restitution orders, adjusting the gross losses shown in State's Exhibit 1 accordingly.

{¶ 16} Defendant argues that the testimonial and documentary evidence on which the court relied does not show whether the victims received compensation from third-party sources that offset or mitigate their losses, and for that reason the amounts of restitution ordered are not supported by competent, credible evidence that demonstrates to a reasonable degree of certainty the actual net economic loss suffered by the victims as a direct and proximate result of defendant's offenses. The record belies that claim. The restitution to the consumer/victims that the trial court ordered will be affirmed.

## Monroe Federal

{¶ 17} Ray testified that he contacted officials of Monroe Federal and asked for a report of any losses Monroe Federal incurred as a result of defendant's offenses. Ray identified State's Exhibit 2 as a memo prepared by Monroe Federal that purports to show the value of the vehicles that were pledged as collateral for Monroe Federal's loans to Bowman Auto Sales.

{¶ 18} The memo lists the year, make, model, and VIN number of each vehicle involved, the "estimated retail value" of those vehicles, "partial recoveries," and the estimated "net loss." The vehicles are separated into two groups: those that were pledged as collateral for loans made to defendant pursuant to the "floor plan," with estimated net losses of $97,040, and those vehicles for which Bowman had obtained fraudulent duplicate titles and issued them to the buyers, with represented net losses of $102,800. The trial court awarded restitution to Monroe Federal for both amounts.

{¶ 19} Ray was aware that Monroe Federal repossessed some of the vehicles, but he did not know how many, and he did not know whether Monroe Federal resold any of the repossessed vehicles. Ray also was not aware whether Monroe Federal received any compensation from third-party sources, such as insurance, to mitigate its losses. Ray did not testify about the contents of Monroe Federal's memo or how it was prepared, including what the "partial recoveries" meant. Ray's only verification of Monroe Federal's losses was to verify the vehicle's VIN numbers. Ray did not verify the value of those vehicles.

{¶ 20} Defendant introduced Defendant's Exhibit A, a judgment of the Miami County Common Pleas Court in favor of Monroe Federal against defendant in the

amount of $437,355.92. Ray testified that he did not investigate Monroe Federal's ability to offset or mitigate its losses arising from defendant's conduct, and was unaware of any civil judgments against defendant.

{¶ 21} The starting point in Monroe Federal's memo for its losses is the "estimated retail value" of the vehicles pledged as collateral for the loans it made to defendant, which may or may not be the same as the amounts Monroe Federal loaned to defendant under the floor plan. Therefore, that document does not demonstrate the actual net economic loss suffered by Monroe Federal as a direct and proximate result of defendant's offenses. Ray had no direct knowledge of Monroe Federal's losses, and his act of merely passing along Monroe Federal's estimate of its losses, State's Exhibit 2, is not sufficient.

{¶ 22} Monroe Federal obtained two judgments against defendant in other actions: a civil judgment in the amount of $437,355.92, defendant's Exhibit A, and a criminal restitution judgment per R.C. 2929.18(D), in the amount of $199,840. The civil judgment is for defendant's failure to repay money loaned to defendant by Monroe Federal on the floor plan. To the extent that any of Monroe Federal's losses reflected in State's Exhibit 2 include loan amounts for which Monroe Federal has already been granted a civil judgment, that duplication constitutes a double recovery and an impermissible economic windfall for Monroe Federal.

{¶ 23} The trial court's restitution order with respect to Monroe Federal is not supported by competent, credible evidence that establishes to a reasonable degree of certainty the actual economic loss suffered by Monroe Federal. Therefore, the trial court abused its discretion with respect to the restitution it awarded to Monroe Federal, and that judgment will be reversed and the matter remanded for further proceedings.

{¶ 24} Defendant's first assignment of error is overruled in part and sustained in part.

## SECOND ASSIGNMENT OF ERROR

{¶ 25} "The trial court erred in determining that the appellant had the ability to pay the ordered restitution as the appellant is 54 years old and is permanently enjoined from engaging in consumer transactions in the state of Ohio until the restitution and all other judgments against him are satisfied by the appellant."

{¶ 26} R.C. 2929.19(B)(6) provides:

{¶ 27} "Before imposing a financial sanction under section 2929.18 of the Revised Code or a fine under section 2929.32 of the Revised Code, the court shall

consider the offender's present and future ability to pay the amount of the sanction or fine."

{¶ 28} The trial court found that defendant has the ability to pay the restitution ordered upon his release from prison, considering defendant's prior success in the business world. Defendant argues that the court abused its discretion, noting that he will be 58 years old when he is released from prison, that he will have a felony record and few prospects for obtaining employment, and that pursuant to the Ohio Attorney General's judgment against defendant, State's Exhibit 3, defendant is enjoined from selling motor vehicles or engaging in any consumer transactions until the restitution awards in this case and the related Ohio Attorney General's judgment and Monroe Federal's judgment are satisfied in full. Those judgments and restitution awards in the aggregate exceed $850,000. According to defendant, the trial court's restitution order places him in a Catch-22 situation where he must sell cars in order to pay the restitution and the civil judgments, but he cannot sell cars until he pays the restitution and the judgments.

{¶ 29} R.C. 2929.19(B)(6), when read in conjunction with R.C. 2929.18(A)(1), the provision authorizing restitution, did not require the court to find that defendant has the ability to pay the full amount of restitution ordered before the court ordered restitution. Nevertheless, we agree with defendant that if defendant's ability to pay is substantially less than the amount of restitution ordered, the court should adjust its restitution award accordingly. Otherwise, the court issues empty orders that have no realistic prospects of being satisfied.

{¶ 30} R.C. 2929.19(B)(6) encompasses consideration of not only defendant's ability to make restitution in full but also defendant's ability to acquire gainful employment from which payments can be made. The fact that defendant will be 58 years old when released from prison, and the further fact that he is enjoined from selling cars, does not prohibit defendant from obtaining employment, working, and making payments on the restitution the court ordered. No abuse of discretion by the trial court has been demonstrated.

{¶ 31} Defendant's second assignment of error is overruled. Having sustained defendant's first assignment of error in part, the trial court's judgment awarding restitution to Monroe Federal Bank is reversed and that matter remanded for further proceedings. In all other respects the trial court's judgment is affirmed.

Judgment reversed in part
and affirmed in part.

DONOVAN, P.J., and FROELICH, J., concur.