[Cite as *State v. Hebb*, 2011-Ohio-4566.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2010-COA-038 |
| LINDA L. HEBB | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:   Criminal appeal from the Ashland County
Court of Common Pleas, Case No. 10-CRI-
035

JUDGMENT:        Affirmed in part, Reversed in part and
Remanded

DATE OF JUDGMENT ENTRY:   September 8, 2011

APPEARANCES:

For Plaintiff-Appellee       For Defendant-Appellant

KAREN KELLOGG        DAVID HOMER
Ashland Prosecutor's Office     13 Park Avenue West, Ste. 609
110 Cottage Street       Mansfield, OH 44902
Ashland, OH 44805

*Gwin, P.J.*

{¶1}   Defendant-appellant Linda L. Hebb appeals from her convictions and sentences in the Ashland County Court of Common Pleas for two counts of Insurance Fraud, felonies of the third degree in violation of R.C. 2913.47(B)(1), and one count of Possession of Criminal Tools a felony of the fifth degree in violation of R.C. 2923.24(A). The plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   Appellant's home had been for sale for several years. On August 3, 2008 appellant's home was destroyed by fire.  Appellant's daughter, Maggie Hebb, who lived at the residence with appellant initially told the police that someone had come into the home assaulted her and then set the house on fire.

{¶3}   Appellant was camping when the fire occurred on August 3, 2008. Appellant had claimed that she, Maggie and a man named Terry had planned to take a camping trip. However, Terry did not show-up, and Maggie decided not to go, so appellant found another individual to drive her motor home to the campground in Findley, Ohio.

{¶4}   On September 3, 2008 Maggie Hebb confessed to the police that she made up the story of an intruder and in fact she had started the fire.[1] Appellant denied knowing that her daughter had set the fire that had destroyed their home.

{¶5}   During the course of the investigation, the police developed information that appellant had an enclosed trailer removed from her property prior to the fire. When asked, appellant denied any knowledge concerning the trailer. Maggie informed the police that there was a trailer, that it contained items from the house, and that it was

---

[1] She was subsequently convicted of Arson.

moved from the house to another location prior to the fire. She assisted law enforcement officers to find the trailer which was parked between two buildings on the farm of Alvin Yoder.

{¶6}    The trailer had a license plate that returned to appellant. Inside the trailer were clothing, artwork and personal mementoes; some boxes had Maggie's name, while others had appellant's name marked on the outside. Appellant never told the police she had stored any personal items away from the house before the fire.

{¶7}    Gregory Warren was the head investigator for Grange Insurance, with which Linda Hebb had a homeowner's policy. It had four parts: (A) $402,300.00 coverage for the house; (B) $40,230.00 for outbuildings; (C) $281,610.00 personal property coverage; and (D) loss of use coverage. He interviewed appellant on August 12, 2008 at her neighbor's house. Appellant told Warren she had not removed any property out of the house prior to the fire. Appellant received $5,000.00 cash advance for living expenses from the insurance company, and she filled out a sworn proof of loss statement and submitted it to Grange Insurance. Appellant's claim was initially rejected by Grange because it had no amount stated for the value of the claim, and it was resubmitted by appellant at the insurance company's request with a blanket estimate of the fire damage of "$750,000.00." Appellant submitted a 28-page list of contents lost with her first claim but it had no values assigned to any of the items claimed destroyed in the fire.

{¶8}    Grange Insurance paid First Merit Bank for the home equity loan outstanding on the property of approximately $213,000.00. This amount was not for the burned home; it was merely the amount of the home mortgage loan to the homeowner.

The loss to the home was valued at over $400,000.00. The insurance company hired an attorney to depose appellant on October 14, 2008, which Investigator Warren attended.

{¶9}    Appellant stated in the deposition that she had survived a husband and a later common-law relationship while living in the residence. She further said that she had an extensive gun and coin collection at one time, but she had sold the coin collection in 2008. No guns or coins were on the loss claim form she had submitted. She had lowered the sale price on her home so she could sell it and get away.

{¶10} Investigator Warren testified that he noticed similarities between the contents of the trailer and the items claimed lost in the fire by appellant. Mr. Warren asked appellant if she moved any personal property out of the home before the fire and if she had anything in storage anywhere. Appellant denied that she had moved any personal property out of the home before the fire and that she had anything in storage anywhere when asked by Mr. Warren during the August 12, 2008 interview.

{¶11} The jury heard evidence that packing materials from a box within the trailer which appeared to have been shipped to the appellant contained a dated newspaper. The date on the newspaper was April 20, 2008.

{¶12} The jury convicted appellant as charged in the indictment.  The trial court sentenced appellant to a term of two years on each count of Insurance Fraud, and a term of twelve months on the count of Criminal Tools with all sentences to be served concurrently. The trial court further imposed restitution to Grange Insurance Company in the amount of $213,134.72 on Count One.

{¶13} Appellant has appealed raising the following assignments of error for our consideration[2]:

{¶14} "I. THE TRIAL COURT SHOULD HAVE GRANTED THE DEFENSE MOTION FOR A DIRECTED VERDICT ON THE CHARGE OF POSSESSION OF CRIMINAL TOOLS AT THE CLOSE OF THE STATE'S CASE.

{¶15} "II. THE CONVICTION FOR POSSESSION OF CRIMINAL TOOLS IS CONTRARY TO LAW.

{¶16} "III. THE CONVICTION FOR POSSESSION OF CRIMINAL TOOLS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} "IV. THE CONVICTION FOR COUNT I OF INSURANCE FRAUD IS CONTRARY TO LAW.

{¶18} "V. THE CONVICTION FOR COUNT I OF INSURANCE FRAUD IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶19} "VI. THE CONVICTION FOR COUNT II OF INSURANCE FRAUD IS CONTRARY TO LAW.

{¶20} "VII. THE CONVICTION FOR COUNT II OF INSURANCE FRAUD IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶21} "VIII. THE ORDER OF RESTITUTION IS CONTRARY TO LAW."

---

[2] Appellant initially filed a direct appeal of her conviction in case number 2010-COA-025. This Court dismissed that appeal on September 16, 2010 for lack of a final appealable order pursuant to the Ohio Supreme Court's decision in *State v. Baker* (2008), 119 Ohio St.3d 197. Thereafter, the trial court issued an amended sentencing entry. This Court again dismissed appellant's appeal filed in case number 2010-COA-032 on October 27, 2010 pursuant to the Ohio Supreme Court's decision in *Baker*. Thereafter the trial court issued a second amended sentencing entry. Appellant has timely appealed from that sentencing entry in the above-captioned case.

STANDARD OF REVIEW

**{¶22}** Each of appellant's assignments of error requires us to review the evidence. In her first assignment of error appellant alleges that the trial court erred in not granting her Crim. R. 29 motion for acquittal on the charge of Possession of Criminal Tools at the conclusion of the State's case.[3] In determining whether a trial court erred in overruling an appellant's motion for judgment of acquittal, the reviewing court focuses on the sufficiency of the evidence. See, e.g., *State v. Carter* (1995), 72 Ohio St.3d 545, 553, 651 N.E.2d 965, 974; *State v. Jenks* (1991), 61 Ohio St.3d 259 at 273, 574 N.E.2d 492 at 503.

**{¶23}** In her second through seventh assignments of error appellant maintains that her convictions are against the sufficiency of the evidence and against the manifest weight of the evidence, respectively.

**{¶24}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), --- U.S. ----, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard). See, *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010-Ohio-2720 at ¶68.

**{¶25}** *Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider

---

[3] Although phrased as the trial court's failure "to grant a directed verdict" we find that the proper motion in a criminal case is a "motion for acquittal" pursuant to Crim R. 29.

the evidence presented at trial in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. See Id*.,* at 318-319, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see also *McDaniel,* --- U.S. ----, 130 S.Ct. at 673-674, 175 L.Ed.2d 582; *United States v. Nevils* (C.A.9, 2010), 548 F.3d 802.

**{¶26}** Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.  See, *State v. Clay*, supra at ¶ 70.

**{¶27}** This second step protects against rare occasions in which "a properly instructed jury may * * * convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 317, 99 S.Ct. 2781, 61 L.Ed.2d 560. More than a "mere modicum" of evidence is required to support a verdict. Id. at 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a reviewing court may not "'ask itself whether *it* believes that the

evidence at the trial established guilt beyond a reasonable doubt,' " Id. at 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560, quoting *Woodby v. INS* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether "*any*" rational trier of fact could have made that finding, Id. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. *Nevils*.

**{¶28}** Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, *State v. Thompkins* (1997), 78 Ohio St. 3d 387, 678 N.E.2d 541, 1997-Ohio-52, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins*, supra, 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

**{¶29}** In *Thompkins*, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a

concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; *State v. Miller* (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶38, 775 N.E.2d 498.

**{¶30}** With these differing standards of review in mind, we address appellant's assignments of error.

I, II & III.

**{¶31}** Appellant's First, Second and Third Assignments of Error challenge her conviction for Possession of Criminal Tools.

**{¶32}** R.C. 2923.24(A) provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

**{¶33}** "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A).

**{¶34}** In the case at bar, the "criminal tool" was the enclosed trailer belonging to appellant that was located parked between two buildings on the farm owned by Alvin Yoder.

**{¶35}** Appellant claims that there was no proof that the trailer was being used as a criminal tool to hide contents of the home from the insurance company that had not

really been destroyed in the fire. Specifically appellant argues that the State failed to prove beyond a reasonable doubt that the items inside the trailer were claimed as a casualty loss by appellant. Appellant claims that Investigator Warren only testified that the items found inside the trailer were "similar" to items listed by appellant on the claim of loss form that she submitted to her insurance company as being destroyed in the fire.

{¶36} Instructive in analyzing the claim in the case at bar, are the cases in which it had been alleged that an automobile or other similar vehicle was a criminal tool for purposes of R.C. 2923.24.

{¶37} "A car, in the abstract, is a 'substance, device, instrument, or article' that can be used criminally under Section 2923.24(A). *State v. Spencer,* 10th Dist. No. 86AP-300, 1987 WL 26327 at * 7 ( Dec. 1, 1987) (quoting R.C. 2923.24(A)). The possessor of the car, however, must intend to use it 'to commit or complete an element of a particular crime.' Id. 'If the possessor intends a noncriminal use of the [car], then the statute has not been offended.' Id. Section 2923.24(A) requires 'the specific intention to use the article to commit a crime.' *State v. McDonald,* 31 Ohio St.3d 47, 49 (1987)." *State v. Dick*, Medina App. No. 09CA0044-M, 2010-Ohio-2148 at ¶13.

{¶38} The record contains sufficient evidence appellant purposely intended to use the enclosed trailer to commit the offense of Insurance Fraud.

{¶39} In the case at bar Larry Bates testified that the trailer had been on the appellant's property prior to the fire which consumed her residence. He further testified that appellant had made arrangements to have the trailer relocated to the farm of an Amish man. Appellant paid Mr. Bates to move the trailer for her to the new location where it would be stored between two buildings. Appellant did not disclose to

investigators after the fire that she had stored valuable property in a trailer off site. Further when asked by Investigator Warren she specifically denied having moved any property off-site prior to the fire, and that she had any property in storage.

{¶40} Both the record of the inventory of the trailer completed by the sheriff's office and the list of property which the appellant had reported to the insurance company was lost in the fire were submitted to the jury. Furthermore the jury heard evidence that packing materials from a box which appeared to have been shipped to the appellant contained a dated newspaper. The date on the newspaper was April 20, 2008.

{¶41} From these additional facts, the jury could find that all the elements of the criminal offense had been proven beyond a reasonable doubt. See *State v. Brooks, supra,* at 192 and 196, 542 N.E.2d at 643 and 646 (Moyer, C.J., concurring); *State v. Eley,* supra*; Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶42} Appellant argues that the insurance company was not defrauded and only paid the mortgage lien on the home to the mortgage holder. Appellant argues that the insurance company was obligated under the policy to pay off the mortgage regardless of any statement appellant may or may not have made. Appellant cites this Court's decision in *State v. Brewster*, Coshocton App. No. 09CA0018, 2010-Ohio-2497 in support of his argument.

{¶43} In *Brewster,* the appellant told the insurer that his car had been stolen and damaged, when he had actually been involved in a hit and run collision. The insurer knew the statement was false yet still elected to pay the claim. The deductible for a collision claim was the same amount as the deductible for a comprehensive claim, so

the defendant would have received no benefit under the terms of the policy as a result of the false statement. Therefore, the evidence was not sufficient to conclude that defendant made a misstatement for any benefit pursuant to the policy with a purpose to defraud. R.C. 2913.47(B)(1).

{¶44} In the case at bar, appellant was attempting to collect for personal property that was inside the home and was destroyed by the ensuing fire. Thus, unlike the appellant in *Brewster,* appellant was attempting to collect more than just the amount owed on the mortgage lien. The fact that the insurer discovered the trailer and did not pay any proceeds for the loss of appellant's personal property resulted from their discoveries during the investigation of the claim.

{¶45}  A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.

{¶46}  Although appellant cross-examined the witnesses and argued that she did not claim any of the items in the trailer on her insurance claim form as being destroyed in the fire, and further that she had packed the items in anticipation of moving to Tennessee, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact.  *State v. Jamison* (1990), 49 Ohio St.3d 182, certiorari

denied (1990), 498 U.S. 881. The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke*, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.

**{¶47}** After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crime of Possession of Criminal Tools as charged in the indictment.

**{¶48}** We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. The evidence in the record could convince a reasonable trier of fact that the elements of Possession of Criminal Tools had been met by the state.

**{¶49}** Appellant's conviction for Possession of Criminal Tools is supported by sufficient evidence, and not against the manifest weight of the evidence.

{¶50} Appellant's First, Second and Third Assignments of Error are overruled in their entirety.

IV & V

{¶51} In appellant's Fourth Assignment of Error appellant alleges that there was insufficient evidence to permit the jury to find her guilty of Insurance Fraud as set forth in Count I of the Indictment. In her Fifth Assignment of Error, appellant argues that the finding of guilty of Insurance Fraud as set forth in Count I of the Indictment was against the weight of the evidence. We disagree.

{¶52} In the case at bar, Count One of the Indictment read,

{¶53} "In that on or about August 12, 2008, in Ashland County, Ohio, Linda L. Hebb, with purpose to defraud or knowing that she was facilitating a fraud, did present to, or cause to be presented to, an insurer, to-wit: Grange Mutual Casualty Company, any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive. Said conduct is in violation of Ohio Revised Code, Section 2913.47(B)(1), a felony of the third decree. (INSURANCE FRAUD)"

{¶54} The parties agree that this charge was related to the statement appellant made to Investigator Greg Warren on August 12, 2010.[4] Appellant denied that she had moved any property from the home before the fire. She further denied that she had any property in storage anywhere.

---

[4] The statements were recorded and admitted at trial as State's Exhibit JJ.

{¶55} Here, appellant was convicted of insurance fraud in violation of R.C. 2913.47(B). The statute reads:

{¶56} "(B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do either of the following:

{¶57} "(1) Present to, or cause to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive;

{¶58} "* * *"

{¶59} "'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).

{¶60} In the case at bar, Larry Bates testified that the trailer had been on the appellant's property prior to the fire which consumed her residence. He further testified that appellant had made arrangements to have the trailer relocated to the farm of an Amish man. Appellant paid Mr. Bates to move the trailer for her to the new location where it would be stored between two buildings. Appellant did not disclose to investigators after the fire that she had stored valuable property in a trailer off site. Further when asked by Investigator Warren she specifically denied having moved any property off site prior to the fire, and that she had any property in storage.

{¶61} Both the record of the inventory of the trailer completed by the sheriff's office and the list of property which the appellant had reported to the insurance company was lost in the fire were submitted to the jury. Furthermore the jury

heard evidence that packing materials from a box which appeared to have been shipped to the appellant contained a dated newspaper. The date on the newspaper was April 20, 2008.

{¶62} The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner* (1995), 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634; *State v. Wallen* (1969), 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722.

{¶63} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of Insurance Fraud with respect to her statements denying that she removed property or had any property in storage. We hold, therefore, that the State met its burden of production regarding each element of the crime of Insurance Fraud as it relates to Count I of the Indictment and, accordingly, there was sufficient evidence to support appellant's conviction.

{¶64} Although appellant cross-examined the State's witnesses in an attempt to show that the statements she made did not in fact defraud the insurance company and that the state had failed to prove appellant claimed any of the property inside the trailer had been destroyed in the fire on the claim form she had submitted to her insurance company to contradict the State's inference that she purposely lied to facilitate her loss claim, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the

evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke,* Franklin App. No. 02AP1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

**{¶65}** We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant had committed the crime of Insurance Fraud as it relates to Count I of the Indictment. Accordingly, appellant's conviction was not against the manifest weight of the evidence.

**{¶66}** Appellant's Fourth and Fifth Assignment of Error are overruled.

## VI & VII

**{¶67}** In appellant's Sixth Assignment of Error appellant alleges that there was insufficient evidence to permit the jury to find her guilty of Insurance Fraud as set forth in Count II of the Indictment. In her Seventh Assignment of Error, appellant argues that the finding of guilty of Insurance Fraud as set forth in Count II of the Indictment was against the weight of the evidence. We disagree.

**{¶68}** Count II of the Indictment against appellant alleged as follows:

**{¶69}** "In that on or about October 14, 2008, in Ashland County, Ohio, Linda L. Hebb, with purpose to defraud or knowing that she was facilitating a fraud, did present to, or cause to be presented to, an insurer, to-wit: Grange Mutual Casualty Company, any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive. Said conduct is in violation of Ohio Revised Code Section 2913.47(B)(1), a felony of the third degree. (INSURANCE FRAUD)."

**{¶70}** Appellant was convicted of insurance fraud in violation of R.C. 2913.47(B). The statute reads:

**{¶71}** "(B) No person, with purpose to defraud or knowing that the person is facilitating a fraud, shall do either of the following:

**{¶72}** "(1) Present to, or cause to be presented to, an insurer any written or oral statement that is part of, or in support of, an application for insurance, a claim for payment pursuant to a policy, or a claim for any other benefit pursuant to a policy, knowing that the statement, or any part of the statement, is false or deceptive;

**{¶73}** "* * *"

**{¶74}** "'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).

**{¶75}** "'Deceptive'" means that a statement, in whole or in part, would cause another to be deceived because it contains a misleading representation, withholds information, prevents the acquisition of information, or by any other conduct, act, or omission creates, confirms, or perpetuates a false impression, including, but not limited

to, a false impression as to law, value, state of mind, or other objective or subjective fact." R.C. 2913.47(A)(2).

**{¶76}** The statements at issue concern appellant's October 14, 2008 deposition. This deposition occurred after appellant's daughter had confessed to setting fire to the home. The statements upon which Count II is based are statements made by appellant concerning her daughter's involvement in starting the fire and appellant's interview with the police. Specifically appellant denied that both that her daughter told appellant that she had started the fire, and further that her daughter told the police in appellant's presence that she, Maggie, had started the fire. Further appellant denied even knowing why the police questioned her daughter. Although appellant eventually admitted that she had asked her daughter about her involvement in the fire at the home, appellant maintained that her daughter never told her that she had started the fire.

**{¶77}** Appellant argues that her statements occurred after the insurance company was aware that her daughter had confessed to starting the fire. Accordingly, appellant maintains, the insurance company did not rely on appellant's statements when deciding whether to pay the claim.

**{¶78}** The State was required to show that appellant had a *purpose,* an *intention,* to defraud, i.e., to benefit herself. R.C. 2913.31(A). The State was not required to prove that she actually received a benefit or that the insurance company actually suffered a detriment. See *H&W Door Co. v. Stemple* (Mar. 31, 1994), Portage App. No. 93-P-0031 (concluding that the fact that appellant stood to benefit evidenced his purpose to defraud as defined by R.C. 2913.01); *State v. Lee* (Nov. 25, 1983), Washington App. No. 82X16, (clarifying that in order for a person to have purpose to

defraud under R.C. 2913.01, "one must merely knowingly intend to obtain some benefit or cause some detriment to another by way of deception"). *State v. Tiger*, 148 Ohio App.3d 61, 772 N.E.2d 144, 2002-Ohio-320 at ¶ 14.

**{¶79}** The intent with which an act is committed may be inferred from the act itself and the surrounding circumstances, including acts and statements of a defendant. *State v. Garner* (1995), 74 Ohio St.3d 49, 60, 1995-Ohio-168, 656 N.E.2d 623, 634; *State v. Wallen* (1969), 21 Ohio App.2d 27, 34, 254 N.E.2d 716, 722.

**{¶80}** Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of Insurance Fraud with respect to her statements denying that she had any knowledge of her daughter's confession to setting the fire. We hold, therefore, that the State met its burden of production regarding each element of the crime of Insurance Fraud as it relates to Count II of the Indictment and, accordingly, there was sufficient evidence to support appellant's conviction.

**{¶81}** Although appellant cross-examined the State's witnesses in an attempt to show that the statements she made did not in fact defraud the insurance company and that the state had failed to prove appellant intended to defraud the insurance company by her statements in the deposition to contradict the State's inference that she purposely lied to facilitate her loss claim, the jury was free to accept or reject any and all of the evidence offered by the appellant and assess the witness' credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-

739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke,* Franklin App. No. 02AP1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

**{¶82}** We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant had committed the crime of Insurance Fraud as it relates to Count II of the Indictment. Accordingly, appellant's conviction was not against the manifest weight of the evidence.

**{¶83}** Appellant's Sixth and Seventh Assignment of Error are overruled.

VIII

**{¶84}** In her Eight Assignment of Error appellant contends that the trial court erred in ordering restitution. We agree.

**{¶85}** R.C.2929.18 states in pertinent part:

**{¶86}** "(A) Except as otherwise provided in this division and in addition to imposing court costs pursuant to section 2947.23 of the Revised Code, the court imposing a sentence upon an offender for a felony may sentence the offender to any financial sanction or combination of financial sanctions authorized under this section or,

in the circumstances specified in section 2929.32 of the Revised Code, may impose upon the offender a fine in accordance with that section. Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

{¶87} "(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender."

{¶88} In *State v. Castaneda,* 168 Ohio App.3d 686, 2006-Ohio-5078, this Court found an order of restitution must be supported by competent and credible evidence from which the trial court can discern the amount of restitution to a reasonable degree of certainty, Id at ¶18, citing *State v. Gears* ( 1999), 135 Ohio App. 3d 297, 300, 733 N.E.

2d 683. See also, *State v. Johnson*, Fairfield App. No. 2007-CA-00012, 2007-Ohio-6099 at ¶9. "The court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." R.C. 2929 .18(A)(1). A trial court abuses its discretion if it orders restitution in an amount that does not bear a reasonable relationship to the actual loss suffered, *Id.,* citing *State v. Williams* (1986), 34 Ohio App.3d 33, 519 N.E.2d 1270.

**{¶89}** In the case at bar, the trial court based the amount of restitution to be paid by appellant on the Pre-Sentence Investigation Report. (Sent. T. Aug. 23, 2010 at 14). The court ordered restitution in the amount of $213,134.72. (Id. at 20).

**{¶90}** Because R.C. 2929.18(A)(1) states that the trial court's order of restitution shall not exceed the amount of economic loss suffered by the victim, and double recovery would amount to an impermissible economic windfall for the victim, the evidence introduced to demonstrate the actual economic loss suffered by the victim must take account of any offsets to the victim's economic loss and any mitigation of damages in the form of compensation received for the loss from, for example, insurance, civil judgments against the defendant or civil judgments against any party responsible for any part of the loss. *State v. Bowman*, 181 Ohio App.3d 407, 909 N.E.2d 170, 2009-Ohio-1281 at ¶12. (Citing *State v. Martin* (2000), 140 Ohio App.3d 326, 747 N.E.2d 318; *State v. Christy,* Wyandot App. No. 16-06-01, 2006-Ohio-4319).

**{¶91}** In the case at bar, the trial court noted that the insurance company had obtained a civil default judgment against Maggie Hebb, appellant's daughter. (Sent. T. Aug. 23, 2010 at 15). To the extent that any of the insurance company's losses include

amounts for which the insurance company has already been granted a civil judgment, that duplication constitutes a double recovery and an impermissible economic windfall for the insurance company, and for that reason the amount of restitution ordered is not supported by competent, credible evidence that demonstrates to a reasonable degree of certainty the actual net economic loss suffered by the insurance company as a direct and proximate result of appellant's offenses. Therefore, the trial court abused its discretion with respect to the restitution it awarded to Grange Insurance. See, *State v. Bowman*, supra at ¶ 22-23.

**{¶92}** Appellant's Eighth Assignment of Error is sustained to the extent that the trial court is to determine the actual economic loss suffered by the victim and to taking into account any offsets to the victim's economic loss and any mitigation of damages in the form of compensation received for the loss from, for example, insurance, civil judgments against the defendant or civil judgments against any party responsible for any part of the loss.

**{¶93}** For the forgoing reasons, the judgment of the Court of Common Pleas, Ashland County, Ohio is affirmed in part and reversed in part, and this case is remanded for proceedings in accordance with our opinion and the law.

By Gwin, P.J., and

Farmer, J., concur;

Edwards, J., dissents

in part

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JULIE A. EDWARDS

WSG:clw 0804

EDWARDS, J., DISSENTING IN PART

{¶94} I concur with the majority's analysis and disposition of appellant's first seven assignments of error, but respectfully disagree with the majority's analysis with respect to appellant's eighth assignment of error.

{¶95} With respect to appellant's eighth assignment of error, the majority appears to find, contrary to appellant's argument, that there is a direct and proximate relationship between the fraud already committed on August 12, 2008, and the subsequent decision by Grange Insurance Company to pay the $213,134.72 mortgage lien on the property. The majority, in sustaining appellant's eighth assignment of error, finds that the trial court erred in ordering appellant to pay $213,134.72 in restitution. The majority remands the matter to the trial court "to determine the actual economic loss suffered by the victim and to taking into account any offsets to the victim's economic loss and any mitigation of damages in the form of compensation received for the loss from, for example, insurance, civil judgments against the defendant or civil judgments against any party responsible for any part of the loss."

{¶96} However, I would find that there is not a direct and proximate relationship between the fraud allegedly committed and Grange Insurance Company's payment of $213,134.72. Appellant was never charged or convicted of arson or complicity to arson. On such basis, I would sustain appellant's eighth assignment of error. Furthermore, even if I concurred with the majority, I would find that a remand for a determination of actual economic loss is unnecessary.

I believe that the trial court could add language to its Judgment Entry stating that the amount of restitution is to be offset by any other type of recovery received from any party responsible for any part of the loss.


_____

Judge Julie A. Edwards

JAE/dr/rmn

[Cite as *State v. Hebb*, 2011-Ohio-4566.]

IN THE COURT OF APPEALS FOR ASHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
        Plaintiff-Appellee          :
                                       :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
LINDA L. HEBB                          :
                                       :
                                       :
        Defendant-Appellant         :          CASE NO. 2010-COA-038


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Ashland County, Ohio is affirmed in part and reversed in part, and this case is remanded for proceedings in accordance with our opinion and the law. Costs to be equally divided between the parties.


_____
HON. W. SCOTT GWIN


_____
HON. SHEILA G. FARMER


_____
HON. JULIE A. EDWARDS