[Cite as *State v. Betley*, 2018-Ohio-2516.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106221**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**BRET M. BETLEY**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-17-613948-A and CR-17-616675-A

**BEFORE:** Kilbane, P.J., Stewart, J., and Jones, J.

**RELEASED AND JOURNALIZED:** June 28, 2018

**ATTORNEY FOR APPELLANT**

P. Andrew Baker
11510 Buckeye Road
Cleveland, Ohio 44104


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
Jonathan Block
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

**{¶1}** Defendant-appellant, Bret M. Betley ("Betley"),[1] brings this appeal, challenging the trial court's restitution order resulting from his convictions for misuse of a credit card, theft, and petty theft. For the reasons set forth below, we reverse and remand.

**{¶2}** In January 2017, Betley's 75-old grandfather ("Grandfather") reported the unauthorized use of his credit cards to the Independence Police Department. Grandfather reported that someone had used his credit cards without his authorization at various local stores in September 2016 through December 2016. Independence police were able to secure photographs of the individual who had used Grandfather's credit cards from store surveillance videos. Grandfather identified his grandson, Betley, from the photographs and further provided the police with a total amount of $22,958.22 in unauthorized charges.

**{¶3}** In February 2017, Betley was indicted in CR-17-613948-A. The indictment charged him with identify fraud, misuse of credit cards, grand theft, theft, and petty theft.

**{¶4}** In April 2017, Grandfather reported additional credit card theft that had occurred in March 2017 to Independence police. The police obtained store surveillance photographs from which Grandfather again identified Betley as the individual using his credit cards. Grandfather reported that Betley had made $5,459.47 in unauthorized charges during the month of March. Betley was then charged in CR-17-616675-A with theft and identity fraud.

---

[1] We note that Betley's first name is spelled differently on the dockets of the two common pleas cases from which he appeals. In Cuyahoga C.P. No. CR-17-613948-A, Betley's first name appears on the docket as "Bret," but in Cuyahoga C.P. No. CR-17-616675-A, his first name is spelled "Brett" on the trial court's docket.

{¶5} In July 2017, Betley entered guilty pleas in both indictments pursuant to a plea agreement with the state. In CR-17-613948-A, he pled guilty to one count of misuse of a credit card, two counts of felony theft, and three counts of petty theft. In CR-17-616675-A, he pled guilty to one count of theft. At the plea hearing, the trial court questioned the state as to whether it sought restitution from Betley. The assistant county prosecutor explained "there is at this time restitution being sought, but that may clear up as [Grandfather] gets to deal with the credit card companies." The trial court advised Betley that he may be required to pay restitution to Grandfather "in an amount equal to whatever economic losses were caused to [Grandfather] by your conduct." The trial court ordered a presentence investigation report ("PSI") and set the matter for sentencing.

{¶6} At the sentencing hearing in August 2017, the assistant county prosecutor explained he had spoken to Grandfather, who could not be present due to health issues. The assistant county prosecutor further advised the trial court that

> the credit card companies are still trying to go after [Grandfather] for the purchases made [by Betley] in this case. He has, throughout the course of the pretrials, tried to show that these were fraudulent charges, ones that he did not authorize. He believes that at the conclusion of this case, showing that the sentencing _ the plea and sentencing has taken place, that the credit card companies would honor the fact that he in fact did not accrue this large sum here. But as of today's proceedings, he is still on the hook for all of the bills that Mr. Betley accrued on his behalf.

{¶7} The trial court questioned the state as to the amount of Grandfather's economic loss:

> THE COURT: And what's the amount of restitution [that] you're seeking, $8,500?
>
> [THE STATE]: Your Honor, the amount would be, I believe, $27,000, based on the two amounts there.
>
> THE COURT: Is that really, though, [Grandfather's] loss?

[THE STATE]: Your Honor, * * * [a]s it currently sits, [Grandfather] still has a bill that is due that may or may not be eliminated with this proceeding. He hasn't accrued anything out of pocket. He hasn't made any payments toward that bill yet based on the fact that he believes that with the showing of the plea * * * and the finding of guilt, that the credit card companies would determine that this was fraudulent charges to his account.

* * *

Your honor, in both the police reports [Grandfather] reported a loss of $22,958 in the first case[, CR-17-613948-A,] and in the second case[, CR-17-616675-A,] the reported loss was $5,459. As I've done my math, I believe that would be a total loss of $28,417.

* * *

I went back, your Honor, and looked into the victim's impact statements * * * and in the first case [Grandfather] stated his losses in that case were $13,900. And then in the second case the impact he claims is $8,500. So his total losses he's claimed for both cases would then be $22,400.

{¶8} These amounts further varied from those reflected in the PSI, which reflected a total amount of $31,458.22. The PSI cited to the police report in which Grandfather reported his loss related to the first case as $22,958.22. As to the second case, the PSI stated Grandfather sought $8,500 in restitution.

{¶9} Defense counsel objected to any amount of restitution, explaining:

[DEFENSE COUNSEL]: I think, your Honor, I would just state there were a number of charges on these credit cards, some by my client were authorized, some were not authorized. * * * Your Honor, there's nobody here to testify today as to which were unauthorized charges which would be due and owing by my client at this time so we would object on those grounds to any restitution order.

{¶10} At the conclusion of the hearing, the trial court thoughtfully sentenced Betley to 18 months of community control sanctions and ordered Betley to pay $22,400 in restitution to Grandfather.[2] The trial court explained it had determined the amount of restitution "from the

_____

[2] The trial court separated out the total restitution order between the two cases in the sentencing journal entries for each case. However, it appears the trial court transposed the restitution amounts sought in each case in these orders _ the sentencing entry for the first case, CR-17-613948-A, orders Betley to pay $8,500 in

statements [Grandfather] provided to the [state in his victim impact statement] in connection with the prosecution." After the trial court issued Betley's sentence, Betley's counsel again voiced the defense objection to restitution.

{¶11} It is from the restitution order that Betley appeals, raising the following two assignments of error for our review:

### Assignment of Error One

The trial court erred when it imposed a restitution order when economic loss to the victim is unknown.

### Assignment of Error Two

The case must be remanded for an evidentiary hearing on restitution.

{¶12} Both of Betley's assigned errors challenge the restitution order. In the first assignment of error, Betley argues there was insufficient evidence to establish that Grandfather suffered an economic loss and, therefore, the trial court erred in ordering him to pay restitution to Grandfather. In the second assignment of error, Betley argues the trial court erred in imposing restitution without holding an evidentiary hearing.

{¶13} The Ohio Supreme Court has held that "[a] trial court has discretion to order restitution in an appropriate case." *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, 994 N.E.2d 423, ¶ 27. Accordingly, we review an order of restitution for an abuse of that discretion. *State v. Maurer*, 2016-Ohio-1380, 63 N.E.3d 534, ¶ 12 (8th Dist.). This court has held "'[t]he amount of restitution must be supported by competent, credible evidence from which the court can discern the amount of restitution to a reasonable degree of certainty.'" *State v. Roberts*, 8th Dist. Cuyahoga No. 99755, 2014-Ohio-115, ¶ 8, quoting *State v. Gears*, 135 Ohio App.3d 297,

restitution to Grandfather; whereas the sentencing entry for the second case, CR-17-616675-A, orders him to pay $13,900 in restitution to Grandfather. The victim impact statements reflect that Grandfather sought $13,900 in restitution in CR-17-613948-A, and $8,500 in restitution in CR-17-616675-A.

300, 733 N.E.2d 683 (6th Dist.1999). A trial court abuses its discretion in ordering an amount of restitution that is not supported by such evidence. *Id.*, citing *State v. Peck*, 6th Dist. Sandusky No. S-12-046, 2013-Ohio-4835, ¶ 19. "'Where evidence of the appropriate amount of restitution does not appear in the record, an evidentiary hearing is required.'" *State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 34 (8th Dist.), quoting *State v. Carrino*, 8th Dist. Cuyahoga No. 67696, 1995 Ohio App. LEXIS 1950, 4 (May 11, 1995).

{¶14} R.C. 2929.18 governs restitution and provides for "[r]estitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss." *Id.* at (A)(1). R.C. 2929.01(L) defines "economic loss," in relevant part, as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense[.]"

{¶15} Betley, relying on *State v. Thornton*, 1st Dist. Hamilton No. C-160501, 2017-Ohio-4037, contends that the record is unclear as to whether Grandfather actually suffered an economic loss. Specifically, he argues "there was no proof that the debt would actually ever be enforced [by the credit card companies]," and further argues, "any restitution order could result in double recovery for [Grandfather]."

{¶16} *Thornton* is distinguishable from the present case. In *Thornton*, the First District Court of Appeals considered a restitution order imposed by the trial court after it had recognized that Fifth Third Bank reimbursed the victims for the full amount they reported stolen from their bank account. *Thornton* at _ 4. The trial court initially ordered the defendant _ Thornton _ to pay restitution to Fifth Third Bank. However, after being advised by Thornton's defense counsel that R.C. 2929.18 did not permit for restitution to a third party, the trial court judge stated "'[w]ell, then what I'll do is I'll order [the victims] to be paid * * * [restitution]. And I guess it's up to them whether they want to pay the bank back.'" *Id.* The First District reversed

the order of restitution as contrary to law and affirmed Thornton's sentence as modified, explaining that because R.C. 2929.18(A)(1) provides that restitution "'shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense[,]'" any order of restitution to Thornton's victims would result in a double recovery and an impermissible windfall since they had been reimbursed by the bank for the amount Thornton had stolen. *Id.* at _ 19, citing *State v. Bowman*, 181 Ohio App.3d 407, 2009-Ohio-1281, 909 N.E.2d 170, ¶ 12 (2d Dist.).

{¶17} Here, the state advised the trial court that the credit card companies were holding Grandfather liable for the charges Betley incurred. The state reported that Grandfather had not yet made any payments to the credit card companies for Betley's fraudulent charges based upon Grandfather's belief that the credit card companies may possibly forgive the debt if presented with documentation that Betley had pled guilty, been sentenced, and ordered to pay restitution related to the fraudulent charges. However, there is nothing in the record to indicate that the credit card company actually intended to credit Grandfather for Betley's fraudulent charges. As the trial court aptly noted "[restitution is] the victim's economic loss and as of right now * * * [Grandfather] is obligated to pay [the charges Betley incurred] * * * under the terms of his agreement with his credit card company."

{¶18} Although the record indicates that Grandfather suffered an economic loss, we do not find that the state presented sufficient evidence from which the trial court was able to discern the appropriate amount of restitution to a reasonable degree of certainty. *Roberts,* 8th Dist. Cuyahoga No. 99755, 2014-Ohio-115, at _ 8; *Preztak,* 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, at _ 34. There was confusion at the sentencing hearing as to the exact amount of restitution Grandfather sought in each case _ Grandfather provided conflicting amounts to the

police, to the probation department, and in his victim impact statement.   In ordering restitution, the trial court stated it relied on the amounts provided by Grandfather in his victim impact statements.   However, the amounts in the victim impact statements conflict with figures contained in the PSI and police reports.   We note that Grandfather was not present at the hearing to explain the discrepancies, nor did the state present any evidence supporting either amount.[3]

{¶19} In light of the foregoing, we find that the restitution amount was arbitrary because the exact amount of restitution in each case was not established to a reasonable degree of certainty.   Accordingly, the first and second assignments of error are sustained.

{¶20} Judgment is reversed, and the matter remanded to the trial court for the purpose of holding an evidentiary hearing to determine the appropriate amount of restitution owed by Betley in each of the two cases.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, PRESIDING JUDGE

MELODY J. STEWART, J., and
LARRY A. JONES, SR., J., CONCUR

---

[3] The state argues that because Grandfather's credit card statements were provided to Betley in discovery and he did not demonstrate the charges he believed were authorized, Betley's argument that an evidentiary hearing should have been held is not well-founded.   We disagree.