[Cite as *State v. Dent*, 2021-Ohio-2551.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>        Plaintiff-Appellee,<br><br>- v -<br><br>AMEEN R. DENT,<br><br>        Defendant-Appellant. | CASE NO. 2020-L-110<br><br>Criminal Appeal from the<br>Willoughby Municipal Court<br><br>Trial Court No. 2020 CRB 01964 |

## O P I N I O N

Decided: July 26, 2021
Judgment: Reversed and vacated in part.

*Richard J. Perez* and *Leslie S. Johns*, 4230 State Route 306, Suite 240, Willoughby, OH 44094 (For Plaintiff-Appellee).

*Vanessa R. Clapp*, Lake County Public Defender, and *Melissa A. Blake*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).

MARY JANE TRAPP, P.J.

{¶1} Appellant, Ameen R. Dent ("Mr. Dent"), appeals the restitution order that was a part of his sentence for one count of first-degree misdemeanor theft.

{¶2} In his sole assignment of error, Mr. Dent contends the trial court abused its discretion when it ordered him to repay his student loans as restitution because the federal Department of Education is not a victim in this case and the unpaid loans are not the direct and proximate causes of harm and/or economic loss to the victim, Malkia Dent

("Ms. Dent"), who is also Mr. Dent's mother. The state "does not disagree" with Mr. Dent's assignment of error and agrees that the Department of Education is not a recognized victim pursuant to the Supreme Court of Ohio's recent holding in *Centerville v. Knab*, 162 Ohio St.3d 623, 2020-Ohio-5219, 166 N.E.3d 1167, which found a municipality in the exercise of its ordinary duties was not a victim entitled to restitution under the victim's bill of rights known as Marsy's Law Ohio Constitution, Article I, Sec. 10a(B). *Id.* at ¶ 1.

{¶3} A review of the trial court's restitution order reveals that Mr. Dent's assignment of error has merit and that the trial court erred in ordering Mr. Dent to repay his defaulted student loans to the Department of Education. The United States Department of Education, a governmental agency, is not a victim of Mr. Dent's theft offense of Ms. Dent's personal information, and the restitution order is not related to the direct and proximate cause of Ms. Dent's economic loss.

{¶4} Finding Mr. Dent's assignment of error to have merit, we vacate the portion of the Willoughby Municipal Court's judgment that orders Mr. Dent to pay restitution to the Department of Education by way of monthly payments on his defaulted loans.

### Substantive and Procedural History

{¶5} In September 2020, a complaint was filed in the Willoughby Municipal Court charging Mr. Dent with one count of tampering with records, a first-degree misdemeanor, in violation of R.C. 2913.42(A)(1).

{¶6} A preliminary hearing was subsequently held during which the prosecutor explained that in 2014 or 2015, Mr. Dent sought to attend the Cleveland Institute of Art and electronically submitted his student loan application, which named Ms. Dent as guarantor and listed her personal information, including her social security number. A loan officer from the Department of Education called Ms. Dent, who told the officer she

2

did not know "anything about this" and to "send me the paperwork." In the meantime, the loans were approved. Mr. Dent defaulted on the loans after his first year of school. There were three loans, totaling approximately $4,000, $24,037, and $14,637.

{¶7} Ms. Dent discovered the defaulted loans several years later when her credit report listed a lowered credit score. She called the Department of Education and discovered that she was a guarantor of almost $60,000 in loans. No action was ever taken against Ms. Dent, and a conviction against Mr. Dent would remove her from the loan and clear her credit score.

{¶8} The prosecutor informed the court that Mr. Dent was willing to enter an *Alford* plea to one count of theft, a first-degree misdemeanor, in violation of R.C. 2913.02 and that the state recommended a $100 fine and probation. The victim advocate, on Ms. Dent's behalf, advocated time in jail. Mr. Dent, by way of his attorney, denied providing his mother's information, but he agreed to enter an *Alford* plea to avoid potential felony charges.

{¶9} The trial court accepted the plea and proceeded to sentencing. The court inquired whether there was a restitution issue, to which the prosecutor informed the court that Ms. Dent had not lost any money on the loan and that he was not seeking restitution to pay the Department of Education, as that was "between them." He reiterated that Mr. Dent's conviction would allow Ms. Dent to remove her name from the loan and her credit report. Ms. Dent confirmed in court that the Department of Education had never filed a claim or sent a letter in regard to the defaulted loans.

{¶10} The court noted that although Mr. Dent had no criminal history, his offense was serious. After considering the state's recommendation for suspended time and a fine, all of the statements made in open court, including those of Mr. Dent and his counsel,

3

and the purposes and principles of sentencing, the court ordered a $100 fine and imposed a 60-month term of probation with various conditions, including full-time employment (a minimum of 40 hours/week), 100 hours of community service, and a monthly payment on Mr. Dent's school loans. The probation also carried a suspended 180-day jail term if Mr. Dent failed to meet his probation conditions.

{¶11} Mr. Dent's counsel objected to the restitution order because the student loan lender was not a victim to the case and because the monthly payments were uncertain since the loans were still in default. Mr. Dent questioned the court as to what would happen to the "probation condition" if he was able to defer repayment and/or obtain loan forgiveness. The court clarified that if no payment was due, then no payment was required, as far as the restitution order for the probation department.

{¶12} Mr. Dent appeals, raising one assignment of error:

{¶13} "The trial court committed an abuse of discretion when it ordered Mr. Dent to repay his student loans as restitution."

{¶14} In his sole assignment of error, Mr. Dent contends the trial court abused its discretion when it ordered him to repay his student loans as restitution because the Department of Education is not a victim and the unpaid loans are not the direct and proximate causes of harm to Ms. Dent. The state "does not disagree" with Mr. Dent's arguments and agrees that the Department of Education is not a recognized victim in light of the recent holding of the Supreme Court of Ohio in *Centerville*, *supra*.

**Standard of Review**

{¶15} We review misdemeanor restitution orders for an abuse of discretion. *State v. Johnson*, 2d Dist. Montgomery No. 24288, 2012-Ohio-1230, ¶ 11. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-

4

Case No. 2020-L-110

making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). To the extent we are required to interpret and apply sections of the Ohio Revised Code, our review is de novo. *State v. Talameh*, 11th Dist. Portage No. 2011-P-0074, 2012-Ohio-4205, ¶ 20; *Johnson* at ¶ 11("[W]e utilize a de novo standard of review when determining to whom restitution may appropriately be awarded").

## Restitution Orders

{¶16} R.C. 2929.28(A)(1) provides a statutory mechanism for ordering restitution in misdemeanor cases, allowing a court to impose financial sanctions on a criminal offender that include "'restitution by the offender to the victim of the offender's crime * * * in an amount based on the victim's economic loss.'" *Centerville* at ¶ 19, quoting R.C. 2929.28(A)(1). The statute further states that restitution may be made "to the victim in open court or to the adult probation department that serves the jurisdiction or the clerk of the court on behalf of the victim." R.C. 2929.28(A)(1). The amount of restitution ordered cannot "exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." *Id.*

## "Victim"

{¶17} Neither R.C. 2929.28, its felony counterpart, R.C. 2929.18, nor the definition statute for the chapter, R.C. 2929.01, defines "victim."

{¶18} R.C. Chapter 2930 et. seq., which deals with rights of victims of crimes, defines a "victim" as "[a] person who is identified as the victim of a crime or specified delinquent act in a police report or in a complaint, indictment, or information that charges the commission of a crime and that provides the basis for the criminal prosecution or delinquency proceeding and subsequent proceedings * * *." R.C. 2930.01(H)(1). The

5

Supreme Court of Ohio, however, clarified in *State v. Allen*, 159 Ohio St.3d 75, 2019-Ohio-4757, 147 N.E.3d 618, that by the express terms of R.C. 2930.01, the definitions in the victim's rights chapter are limited to that chapter and, thus, do not govern the provisions in R.C. 2929.18 and R.C. 2929.28. *Id.* at ¶ 13.

{¶19} This court has defined a "victim of a crime" as "the person or entity that was the 'object' of the crime." *State v. Pietrangelo*, 11th Dist. Lake No. 2003-L-125, 2005-Ohio-1686, ¶ 15, quoting *State v. Samuels*, 4th Dist. Washington No. 03CA8, 2003-Ohio-6106, ¶ 5.

{¶20} In *Pietrangelo*, we determined that "a government entity voluntarily advancing its own funds to pursue a drug buy through an informant is not one of the scenarios contemplated by R.C. 2929.18(A)(1)." *Id.* We recognized that "[i]n certain circumstances, a government entity may be considered a victim of a crime under R.C. 2929.18(A)(1): For example, when government funds are embezzled or when government property is vandalized." *Id.* We also acknowledged the state's "legitimate interest and entitlement, in certain cases, to defray the spiraling costs of criminal investigation on behalf of the taxpayer." *Id.* at ¶ 17. However, we agreed with the majority of federal and state courts that had concluded "'the government is not a victim entitled to restitution where public moneys are expended in pursuit of solving crimes, as these expenditures represent normal operating costs.'" *Id.*, quoting *State v. Sequiera*, 93 Haw. 34, 43, 995 P.2d 335 (Haw. App. 2000). Based on the absence of "an express statement from the legislature authorizing trial courts to sentence criminal defendants to pay restitution to law enforcement agencies for this purpose," we declined to "take it upon ourselves to judicially rewrite the statute." *Id.*

6

{¶21} In *Allen, supra,* the Supreme Court of Ohio considered whether a bank was a "victim" entitled to restitution. The court found that a bank was a victim for the purposes of restitution when it cashed a forged check and then recredited the depositor's account for a stolen amount. *Id.* at ¶ 1. The court explained that three considerations supported the conclusion that the bank was a victim: (1) the bank had a proper interest in the money it held for an account holder and suffered a loss; (2) the bank had a statutory obligation to bear the loss and correct an erroneous deduction from an account; and (3) the bank itself was the target of the crime because the offender defrauded and tricked the bank when he presented a forged check to the bank. *Id.* at ¶ 6-8. *See also State v. Burgett,* 2019-Ohio-5348, 139 N.E.3d 940, ¶ 20-21 (1st Dist.) (reversing the trial court's restitution order and remanding in light of *Allen* to determine whether a fundraising website was a victim statutorily entitled to restitution, and if so, to then determine its economic loss).

{¶22} Recently, in *Centerville,* the Supreme Court of Ohio considered the meaning of the word "victim" in the misdemeanor restitution statute, R.C. 2929.28, as well as its felony counterpart, R.C. 2929.18, as it relates to Ohio Constitution, Article I, Section 10a(B), "Marsy's Law," the victim's bill of rights.

{¶23} The court first noted that Marsy's Law does not provide a procedural mechanism for ordering restitution; instead it states that a victim "may assert his or her constitutional rights in a proceeding involving the underlying criminal act." *Id.* at ¶ 18. The provisions of the amendment are self-executing and "'supersede all conflicting state laws.'" *Id.,* quoting Article I, Section 10a(E).

{¶24} The court concluded that a municipal corporation does not qualify as a victim under Article I, Section 10a of the Ohio Constitution and that it is not entitled to restitution under that section based on both the text and context of the amendment. The

7

voters who approved the constitutional amendment did not intend that a municipal corporation – a governmental entity – qualifies as a victim under that amendment. *Id.* at ¶ 31. Further, as the court of appeals had noted, the municipal corporation in that case was not a victim because it was performing official duties, and did not experience "economic loss" as used in R.C. 2929.28(A)(1). All of the officers responding to the false report were on duty and would have been paid regardless of the appellant's action. *Id.* at ¶ 9.

{¶25} As our review of the definition of "victim" for statutory restitution purposes indicates, the Department of Education is not a victim in this case. The restitution order requiring repayment of defaulted loans is not remedying Ms. Dent's economic loss caused by Mr. Dent's theft of her personal information. Ms. Dent stated twice during the hearing that there was no claim against her by the Department of Education and that Mr. Dent's conviction would allow her to fix her credit score and remove her as guarantor of the loans, which is the "harm" caused by Mr. Dent's conviction for theft.

{¶26} Furthermore, we decline to speculate whether the Department of Education can be a "victim" entitled to restitution under either R.C. 2929.28, R.C. 2929.29, or Marsy's Law because it is not a victim in this case. It would be premature to decide whether the Department of Education, acting in its quasi-capacity as a lender, can be a "victim" entitled to restitution or if the Supreme Court of Ohio foreclosed on that possibility under Marsy's Law.

**Economic Loss**

{¶27} Mr. Dent also argues that the restitution order is not related to the direct and proximate cause of Ms. Dent's harm from his theft of her personal information.

8

{¶28} We agree. "Generally, the right to order restitution is limited to the actual damage or loss caused by the offense of which the defendant is convicted. Implicit in this principle is that the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered." *State v. Williams*, 34 Ohio App.3d 33, 516 N.E.2d 1270 (2d Dist.1986), paragraph one of the syllabus.

{¶29} In a felony restitution case, *State v. Ciresi*, 2020-Ohio-5305, 162 N.E.3d 846 (11th Dist.), we discussed "economic loss" as it relates to restitution. It is defined in part as "'any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes * * * any property loss * * * incurred as a result of the commission of the offense.' 'Economic loss' does not include non-economic loss or any punitive or exemplary damages." *Id.* at ¶ 20, quoting R.C. 2929.01(L); *State v. Blas*, 11th Dist. Portage No. 2017-P-0030, 2018-Ohio-2461, ¶ 21. "'Economic loss' is further defined as '[a] monetary loss such as lost wages or lost profits * * *.'" *Ciresi* at ¶ 21, quoting *Black's Law Dictionary* (11th Ed.2019). We further explained that "[u]nlike intrinsic value, which reflects value as a personal internal value, the restitution statute limits recovery to the victim's 'economic loss' that connotes a tangible loss of material wealth or money that is objective and determinable in relation to trade." *Id.* at ¶ 27. Most fundamentally, in the context of restitution, due process ""requires that the amount of restitution ordered bear a reasonable relationship to the actual loss suffered by the victim."" *Id.* at ¶ 29, quoting *State v. Chaney*, 2018-Ohio-552, 106 N.E.3d 79, ¶ 12 (12th Dist.), quoting *State v. Stamper*, 12th Dist. Butler No. CA2009-04-115, 2010-Ohio-1939, ¶ 17.

{¶30} Ordering the repayment of defaulted loans to the Department of Education does not bear a reasonable relationship to Ms. Dent's economic loss, i.e., her lowered

9

credit score. Moreover, even if the Department of Education was entitled to restitution in this case, the defaulted loans are not yet in repayment status, and the sum and/or monthly payment is uncertain. Implicit in the principle that the right to order restitution is limited to the actual damage or loss caused by the offense of which the defendant is convicted is that the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered. *Williams*, *supra*, at paragraph one of the syllabus (construing former R.C. 2929.11(E)). *See also State v. Betley*, 2018-Ohio-2516, 115 N.E.3d 836, ¶ 19 (8th Dist.) (restitution amount was arbitrary because the state failed to establish the exact amount of restitution to a reasonable degree of certainty).

{¶31} In light of the foregoing, we conclude that the trial court erred in ordering Mr. Dent to make payments on his student loans as part of a restitution order. Thus, this portion of the trial court's sentence is reversed and vacated.

{¶32} Mr. Dent's sole assignment of error having been sustained, the order of restitution to Department of Education is reversed and vacated.

CYNTHIA WESTCOTT RICE, J.,

MATT LYNCH, J.,

concur.