[Cite as *State v. Palmer*, 2024-Ohio-1445.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230412 |
| | | TRIAL NO. 23TRD-1318A |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| EDYN PALMER, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:   Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: April 17, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsely*, Chief Prosecuting Attorney, *Victoria Gooder* and *Danielle Ferris*, Assistant Prosecuting Attorneys, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**KINSLEY, JUDGE.**

{¶1}   When one driver hits another and causes damage to a car, the law often permits an award of restitution.  But restitution is not automatic.  The offending driver may request a hearing and has a right to due process that includes the meaningful opportunity to be heard, both as to the value of damages caused to the car and as to whether restitution should be awarded at all.  What does it mean to have such an opportunity?  Is it enough to simply inspect a computer printout that estimates a car's value or a mechanic's receipt that estimates the costs of needed repairs?  Or does due process require that a driver be able to subpoena a witness to answer questions about the status of a damaged car when restitution is contested?  As we hold today, the answer to these questions is:  "it depends."

{¶2}   After entering no-contest pleas and being found guilty of failure to maintain reasonable control in violation of R.C. 4511.202 and the amended charge of reckless operation of a vehicle in violation of Cincinnati Municipal Code 506-6, defendant-appellant Edyn Palmer appeals the judgment of the trial court ordering her to pay $3,233 in restitution.  For the reasons that follow, we reverse the trial court's order as to the amount of restitution and remand the matter to the trial court to hold an evidentiary hearing on that question.

### *Factual and Procedural Background*

{¶3}   On July 24, 2022, Edyn Palmer lost control of her vehicle and struck the vehicle of Jamie Adams.  After colliding with Adams's vehicle, Palmer fled the scene of the accident and failed to provide her driver's license and insurance information.  As a result, Palmer was charged with failure to maintain reasonable control in

violation of R.C. 4511.202, a minor misdemeanor, and leaving the scene of an accident in violation of R.C. 4549.02, a misdemeanor of the first degree.

{¶4}   On April 4, 2023, Palmer entered no-contest pleas to the reasonable-control charge and an amended charge of reckless operation of a vehicle in violation of Cincinnati Municipal Code 506-6, a misdemeanor of the fourth degree.  The state briefly explained the facts of the case on the record, generally describing the accident without mentioning the specific damage that was caused to Adams's car.  The trial court found Palmer guilty of both charges.

{¶5}   The trial court then allowed both sides to present arguments as to the appropriate sentence.  Defense counsel acknowledged that restitution was owed to Adams, but requested a restitution hearing, along with "reputable" information, to establish the amount.  The state agreed that the case should be set for a restitution hearing, because Adams had not brought a receipt for the damage to her vehicle to court.

{¶6}   The trial court then asked Adams, who was present in the courtroom, if she had anything she wanted to add.  Adams stated, "[W]hen we heard from the mechanic they pretty much said unless you have a judge tell you to get a receipt we won't write you one[.]"  When the trial court asked Adams if the vehicle was totaled, she responded, "[I]t appears they estimated it's probably about three for the car, and it would be four for the damages, so they totaled it."  In response, the trial court issued an order requiring "Ron's Complete Auto Body," the name provided by Adams as the mechanic, to provide a receipt that Adams could present as evidence of the repair amount for the car.

{¶7}   The trial court also asked defense counsel if the Kelley Blue Book ("Blue Book") value of the car would be acceptable, if provided by Adams.  Defense counsel responded, "The concern I have here is, Your Honor, this happened in July, and from what I understand the prosecuting witness just took the car to a mechanic this week. * * * So - - I mean, like I said, I have concerns as far as the dollar amount."

{¶8}   The matter was continued until May 30, 2023, for a restitution hearing on the reckless-driving charge.  On the reasonable-control charge, the trial court sentenced Palmer to no fine, and that charge was fully disposed.

{¶9}   At the May 30th hearing, Adams did not appear.  Instead, the state and defense counsel apprised the court of the status of the restitution evidence.  During the hearing, the prosecutor indicated that Adams had submitted a repair estimate and a Blue Book printout with an estimated value range.  Defense counsel questioned whether Adams had car insurance and the deductible of that insurance policy, noting that the police report indicated that Adams had insurance.[1]  The trial court continued the matter to July 17, 2023, for further investigation of the insurance matter.

{¶10}   At the July 17, 2023 hearing, defense counsel took issue with the Blue Book estimated value range because it was for the replacement of the vehicle, and Palmer reportedly had evidence of Adams recently driving the vehicle. Defense counsel also took issue with the fact that Adams was not present, although subpoenaed by defense counsel.  The prosecution argued that the repair estimate and Blue Book printout were sufficient evidence to prove the restitution amount.  In response, defense counsel questioned the authenticity of the estimate, noting the lack of self-

---

[1] If Adams in fact maintained an insurance policy that provided coverage, less a deductible, for repairs to her vehicle, then precedent indicates the amount of restitution should be set at the amount of the deductible, not the amount of the damage.  *See, e.g., State v. Nickens*, 8th Dist. Cuyahoga No. 104670, 2017-Ohio-1448.

authenticating information. Importantly, the state agreed that it could not authenticate the document without a witness present. As a result, the trial court explained that it was "not ordering restitution based on" the state's lack of an authenticating witness and continued the hearing to allow the state to secure Adams's testimony.

{¶11} The final hearing was held on July 31, 2023. Again, Adams was not present. Through the prosecutor, the state submitted two exhibits as its sole evidence in support of restitution. As Exhibit 1, the state submitted a Blue Book value range printout. The exhibit reflected a private-party range of $2,540 to $3,925, with a private-party value of $3,233. It indicated these values were valid as of April 7, 2023. It did not otherwise indicate the make, model, age, or condition of the vehicle, the source of the values, or who created the printout. As Exhibit 2, the state submitted a damage report from ASA Automative Service Association reflecting a cost of $3,800 to repair the car.[2] The report indicated it was for Adams's 2006 Chevy Impala and bore a date of April 6, 2023, more than eight months after the July 24, 2022 accident involving Palmer.

{¶12} Defense counsel objected to the admission of both pieces of evidence, but the trial court admitted them over the objection. The prosecution provided no testimony to authenticate the exhibits and provided no further evidence to support a restitution amount. In closing arguments, defense counsel argued that Palmer's constitutional right to confront Adams had been violated, because Adams had been subpoenaed and continuously failed to appear. In response, the prosecution argued

---

[2] The record is unclear as to why Adams initially sought a court order for Ron's Complete Auto Body for a repair receipt, but the state later submitted a report from ASA Automative Service Association rather than Ron's.

that Palmer no longer maintained a constitutional right to confront Adams because Palmer pleaded guilty to the underlying traffic offense. No evidence was presented, and no discussion took place, regarding the insurance question that had been raised at the July 17th hearing.

{¶13} Ultimately, the trial court imposed a restitution amount of $3,233, based entirely on the Blue Book value document submitted as state's Exhibit 1. According to the trial court, the exhibit reflected a value range of between $2,549 and $3,925. The trial court explained that it selected the amount of $3,233, which was listed as the estimated private-party value rate on the printout, because it was the lesser of the values, considering that the damage report reflected costs of $3,800. The trial court also sentenced Palmer to a suspended jail sentence of 30 days, a $200 fine, one year of probation, and treatment and counseling as recommended by Hamilton County Probation.

{¶14} Palmer timely filed this appeal, challenging the restitution order.

### *Assignments of Error*

{¶15} Palmer raises two assignments of error on appeal. First, Palmer argues that the trial court deprived her of her right to confrontation under Article 1, Section 10 of the Ohio Constitution. Second, Palmer argues that the trial court erred when it ordered her to pay $3,233 in restitution in violation of her due-process rights. She raises two issues under this assignment of error, one factual and one constitutional. First, Palmer argues that the restitution award was improper because it exceeded the amount of economic loss suffered by Adams. Second, Palmer argues that the trial court violated her due-process rights when it ordered her to pay restitution without allowing her to cross-examine Adams.

{**¶16**}　We address Palmer's second assignment of error first, as it is dispositive of her appeal.

### *Economic Loss*

{**¶17**}　"An appellate court reviews a trial court's award of restitution in a misdemeanor case for an abuse of discretion." (Internal citation omitted.) *State v. Miles*, 1st Dist. Hamilton No. C-210226, 2021-Ohio-4581, ¶ 5. "[T]he amount of restitution must be supported by competent, credible evidence from which the court can discern the amount of restitution to a reasonable degree of certainty. A trial court abuses its discretion in ordering an amount of restitution that is not supported by such evidence." (Internal citations and quotation marks omitted.) *State v. Betley*, 2018-Ohio-2516, 115 N.E.3d 836, ¶ 13 (8th Dist.).

{**¶18**}　R.C. 2929.28 governs financial sanctions. In relevant part, R.C. 2929.28(A)(1) provides that "[t]he amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense," and that "[t]he court shall determine the amount of full restitution by a preponderance of the evidence."

{**¶19**}　Palmer argues that the evidence presented is not reliable and does not show a causal connection between the incident and the economic loss Adams suffered. R.C. 2929.01(L) defines economic loss as "any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense."

{**¶20**}　With regard to vehicles, damage may be determined by demonstrating the reasonable cost to repair the vehicle. *State v. Moore*, 1st Dist. Hamilton No. C-220421, 2023-Ohio-3318, ¶ 12. However, where a vehicle has been totally destroyed

or where the cost to repair it exceeds its value, the owner's damages are limited to the value of the vehicle immediately prior to the accident. *Id.*

**{¶21}** In this case, the record lacks competent, credible evidence as to the damage Adams's vehicle suffered as a direct and proximate cause of Palmer's conduct. Two fundamental problems exist with the evidence before us. The first problem relates to the lack of evidence establishing the reasonable cost to repair Adams's vehicle from the damage caused by Palmer. While Palmer admitted that restitution was owed, Palmer did not agree to any particular damage that was caused to Adams's vehicle and sought a hearing on this question. No evidence presented, either by way of Palmer's guilty plea or by the state at the restitution hearing, connected Palmer's conduct to the specific damage to Adams's car. The second problem relates to the absence of evidence establishing the value of Adams's vehicle immediately prior to the accident.

**{¶22}** As a starting point, the traffic citations to which Palmer pleaded guilty make no mention of the damage caused to Adams's vehicle and only describe the make and model of Palmer's vehicle. During the plea hearing, the only information read into the record regarding the incident was that Palmer failed to maintain reasonable control of her vehicle resulting in a crash. As a result, no facts admitted by Palmer established the make, model, and year of the vehicle that Palmer struck, or details of what damage was caused as a result. And Adams never appeared at the restitution hearing to describe the damage to her car, nor did any other witness establish this critical fact. Without knowing what damage Adams's car suffered from the accident, it was not possible for the trial court to assess whether the damage report related to Palmer's accident or to some other occurrence.

{¶23} The absence of this information in the record complicated the trial court's ability to ascertain Adams's economic loss under the standards set out in *Moore*, 1st Dist. Hamilton No. C-220421, 2023-Ohio-3318, at ¶ 12. The trial court was tasked with determining the reasonable cost to repair Adams's vehicle from the damage sustained in the accident with Palmer. But absent any evidence as to what that damage was, the trial court could not impute the $3,800 ASA Automative Service Association damage report to Palmer. The more than eight-month delay between the accident and the damage report only further compels this conclusion.

{¶24} At step two, the trial court concluded that a value less than the estimated cost of repair was appropriate for Adams's car. But no evidence in the record established the value of Adams's vehicle as of July 2022, immediately before the accident. Even if we accept the unauthenticated Blue Book printout, it indicates, "value valid as of 04/07/2023," a date more than eight months *after* the accident. Even worse, the printout does not state the make, model, or year of the vehicle that was used to generate the estimate. Thus, the Blue Book printout is of little to no utility in demonstrating the damage Adams suffered as a direct and proximate result of Palmer's conduct.

{¶25} Making matters worse, the trial court provided no explanation as to why it selected $3,233, the private-party value, from the range of $2,540 to $3,925 as the value of Adams's vehicle. There is no evidence in the record that shows that Adams sold her vehicle to a private party or otherwise connected Adams's damage to the private-party figure used by the trial court.

{¶26} Thus, because the evidence did not show a causal connection between Palmer's conduct and the damage to Adams's vehicle, and because the record lacks

9

competent, credible evidence to establish the amount of restitution under *Moore*, 1st Dist. Hamilton No. C-220421, 2023-Ohio-3318, at ¶ 12, we sustain Palmer's second assignment of error as to that issue, reverse the trial court's judgment as to the amount of restitution, and remand the matter to the trial court for an evidentiary hearing as to restitution. But our analysis does not stop there.

### *Due Process*

{¶27} Palmer's second assignment of error also raises a constitutional question as to the requirement of due process at restitution hearings.

{¶28} This court previously acknowledged that a defendant is entitled to due process at a restitution hearing in *State v. Miles*, 1st Dist. Hamilton No. C-210226, 2021-Ohio-4581. As we noted in *Miles*, "[w]hile the concept of due process may be flexible and amorphous, at a minimum, procedural due process requires an opportunity to be heard." *Id*. at ¶ 8. Describing what due process means, we indicated that it must be "meaningful" and entitles a defendant to both cross-examine adverse witnesses and to present her own evidence. *Id*. at ¶ 8-9. The failure to provide for adequate due process in a restitution hearing constitutes an abuse of discretion. *Id*. at ¶ 9.

{¶29} Tracking *Miles*, Palmer argues that due process allows her the right to cross-examine a witness as to the exhibits presented by the state at the restitution hearing. While she does not explicitly couch her argument as a right to compulsory process, she in essence argues that she should have a right to compel a victim who seeks restitution to appear at a restitution hearing.

{¶30} No Ohio court has squarely addressed this question. However, the courts of numerous other states have considered whether a defendant has a

constitutional due process right to compel a complaining witness to appear and be cross-examined at a restitution hearing and have resolved this question in the affirmative. *See, e.g., Commonwealth v. Franz*, Mass. App. No. 06-P-1264, 2008 Unpub. LEXIS 1132 (Jan. 11, 2008) (holding that, although defendant's right to cross-examine is not absolute, defendant should have the opportunity to cross-examine at a restitution hearing, which should be determined based on totality of the circumstances); *Franco v. State*, 918 A.2d 1158 (Del.2007) (holding that due process is violated when a trial court refuses to allow cross-examination where it is relevant to determining the proper restitution amount); *State v. Butcher*, Wash.App. No. 75973-6-I, 2018 Wash.App. LEXIS 1028 (Apr. 30, 2018) (holding that because the restitution amount was based solely on medical bills and the complaining witness's statements that the bill were connected to the incident, cross-examination of complaining witness was warranted to satisfy due process).

{¶**31**}  Arizona is one such example.  In *State v. Quijada*, 246 Ariz. 356, 439 P.3d 815 (App.2019), the defendant pled guilty to facilitation to commit trafficking in stolen property, agreed to pay restitution not to exceed one hundred dollars, and was sentenced to two years of probation.  *Id.* at 360.  To establish restitution, the complaining witness provided three different "unsworn" restitution statements that listed various items and their value. *Id.*  The first statement reported a financial loss of $5,530.75, the second statement reported a financial loss of $13,252.25, and the third statement reported a financial loss of $ 45,320.18.  *Id.*

{¶**32**}  At the first and second restitution hearings, the complaining witness appeared to testify, but the matters were continued.  *Id.* at 361.  At the third setting, the complaining witness appeared, but left before testifying due to an illness.  *Id.*  At

the fourth setting, the complaining witness failed to appear and had indicated to the prosecution that she was unwilling and/or unable to participate. *Id.* The state argued that restitution could be awarded on the statements provided, to which defense counsel objected. *Id.* Without a hearing, the trial court found that the evidence supported an economic loss of $39,969.37. *Id.*

**{¶33}** About two years later, the trial court extended the term of the defendant's probation because restitution had not been paid in full. *Id.* at 362. The defendant then petitioned for postjudgment relief in part based on her inability to cross-examine the complaining witness. *Id.* The trial court reaffirmed its finding and increased the restitution amount to $40,885.42. *Id.* at 363.

**{¶34}** The defendant appealed, arguing that her due-process rights were violated because she was not given the opportunity to question the complaining witness. *Quijada*, 246 Ariz. At 363, 439 P.3d 815. While noting that "[r]estitution is part of the sentencing process which is 'not surrounded by the panoply of protections afforded a defendant at trial,' the court nevertheless held that due process requires 'the opportunity to contest the information on which the restitution award is based, present relevant evidence, and to be heard.'" *Id.* at 364. Interpreting due process contextually, the court noted that a defendant cannot obtain a meaningful opportunity to be heard without cross-examination when the information necessary to mount a restitution defense rests solely with the victim. *Id.* at 365. By denying the defendant the opportunity to cross-examine the victim, the trial court "effectively cut off the only avenue by which she could challenge the information on which the court would determine the amount of restitution." *Id.*

**{¶35}** The *Quijada* court acknowledged the burden on a complaining witness that a rigid rule requiring cross-examination would create. *Id.* at 366. It cautioned against converting a defendant's due-process protections "into tools to subject victims to unnecessary and potentially injurious court proceedings" and fashioned a rule that balanced the defendant's and victim's competing interests at the restitution stage. *Id.* According to that rule, "where events or circumstances call the veracity or accuracy of evidence concerning restitution into doubt, and the defendant cannot adequately challenge that evidence without questioning the victim in open court under oath, due process requires that the defendant be given the opportunity to do so." *Id.*

**{¶36}** We agree with the reasoning in *Quijada*. As we observed in *Miles*, due process is flexible and focuses on protecting a defendant's right to be heard. *Miles,* 1st Dist. Hamilton No. C-210226, 2021-Ohio-4581, at ¶ 8-9. In many cases, that objective will be accomplished without the need for cross-examination of the complaining witness or any particular witness at all. But sometimes a defendant will be unable to be meaningfully heard in defense of the restitution amount or the requirement to pay restitution at all without the ability to compel the presence of a witness to question. In those circumstances, due process requires that the defendant be afforded the opportunity to compel a witness's presence through the issuance of a subpoena and to meaningfully examine or cross-examine the witness at a hearing.

**{¶37}** Here, the defense raised significant questions as to the authenticity and relevance of the state's restitution evidence. Absent from the record, but relevant to the trial court's value determination, was evidence as to the damage sustained to Adams's vehicle, its condition before the accident, how that condition may have been the same or different as of the April 7, 2023 Blue Book printout, and the car

information that was input to generate the Blue Book printout. One way for Palmer to contest these key pieces of information was to question Adams, given that Palmer would have no other access to evidence about Adams's car or the state's exhibits. In fact, the state appeared to admit as much at the July 17th hearing, when it admitted it could not authenticate its two exhibits without Adams's presence. And Palmer may not have subpoenaed Adams at all had Adams submitted an affidavit along with the exhibits to explain the missing information.

{¶38} We therefore hold that due process was not satisfied at the restitution hearing. We accordingly sustain Palmer's second assignment of error and remand this matter to the trial court to conduct an evidentiary hearing that comports with the contours of due process specific to this case.

{¶39} Because we have sustained Palmer's second assignment of error, Palmer's first assignment of error is moot, and we decline to address it.

### *Conclusion*

{¶40} The trial court's judgment awarding $3,233 in restitution was not supported by competent, credible evidence and did not comport with the requirements of due process. We accordingly sustain Palmer's second assignment of error, reverse the trial court's judgment as to the amount of restitution, and remand this cause to the trial court to hold an evidentiary hearing in accordance with R.C. 2929.28(A)(1) and this opinion.

Judgment reversed and cause remanded.

CROUSE, J., CONCURS.

14

**ZAYAS, P.J., CONCURS IN PART AND DISSENTS IN PART.**

**ZAYAS, P.J., CONCURRING IN PART AND DISSENTING IN PART.**

{¶41} I agree that the restitution amount was not based on competent and credible evidence because the submitted Blue Book value of the vehicle does not include sufficient information to identify the vehicle or the condition of the vehicle used to generate the value. *See Moore*, 1st Dist. Hamilton No. C-220421, 2023-Ohio-3318, at ¶ 14 (The Blue Book value was insufficient to establish the fair market value because it does not "indicate the mileage used to determine the value of [the totaled vehicle] or that the value was generated based upon any information provided by [the victim] regarding the condition of his vehicle prior to the accident."); *State v. Kennedy*, 2d Dist. Montgomery No. 25037, 2012-Ohio-5215, ¶ 14-16 (holding the Blue Book value of the damaged vehicle was not supported by competent and credible evidence where the victim-impact statement did not indicate the source of the information used to generate the report). Therefore, a completed Kelley Blue Book Value would be sufficient to determine the fair market value of the vehicle. *See, e.g., Zanesville v. Quinn*, 5th Dist. Muskingum No. CT207-0033, 2018-Ohio-429, ¶ 22 (Where the repair estimates exceeded the Kelley Blue Book value, which was admitted as an exhibit, the trial court did not err in imposing a restitution amount that reflected the Blue Book value).

{¶42} With respect to the repair estimate, at the plea hearing, Palmer requested a receipt from a "reputable mechanic" to establish that $4,000 was the correct restitution amount. Palmer believed that the amount was significant based on the photo of the vehicle's damage. The victim sought and received an order for Ron's Complete Auto Body to submit a written estimate. When the estimate was submitted,

as the prosecutor explained, the name of the shop that provided the estimate was cut off from the top of the document.[3] According to the estimate, the cost to repair the victim's vehicle was $3,800 to replace the left quarter panel and refinish the vehicle. Providing an estimate that includes the name of the repair shop should cure that deficiency. *See Cleveland v. Figueroa*, 8th Dist. Cuyahoga No. 111267, 2022-Ohio-4012, ¶ 11 (explaining that because the rules of evidence do not apply in sentencing proceedings, "the city was not required to set forth any evidentiary foundation before presenting the written estimate [that depicted the cost to repair the damages to the victim's vehicle] to the trial court for its consideration of the amount of restitution."); R.C. 2929.28 (allowing the court to determine the restitution amount based on information provided by "[t]he victim, victim's representative, victim's attorney, if applicable, the prosecutor or the prosecutor's designee").

{¶43} Because the evidence was insufficient to establish the market value of the vehicle, I agree that the trial court abused its discretion in determining the restitution amount. Accordingly, we should sustain the second assignment of error, reverse the trial court's judgment and remand the matter for a restitution hearing.

{¶44} I also agree that the first assignment of error, that Palmer was deprived of her right to confrontation under Article I, Section 10 of the Ohio Constitution, is moot. "We should avoid reaching a constitutional question when 'other issues are apparent in the record which will dispose of the case on its merits.' " *In re D.S.*, 152 Ohio St.3d 109, 2017-Ohio-8289, 93 N.E.3d 937, ¶ 7. For this reason, I respectfully dissent from the majority's dicta regarding Palmer's "right to compel a victim who

---

[3] Although the majority claims the repair estimate was submitted by ASA Automative Service Association, the bottom of the repair receipt merely acknowledges that the repair shop was a member of this association.

seeks restitution to appear at a restitution hearing." The majority appears to squeeze Palmer's first assignment of error, the compulsory-process argument, into a due-process analysis that was not raised or briefed by the parties.[4] While this court has held that the concept of due process includes the right to cross-examine adverse witnesses, *Miles*, 1st Dist. Hamilton No. C-210226, 2021-Ohio-4581, at ¶ 9, in this case, Palmer sought to compel the victim's testimony.

**{¶45}** Palmer wished to question the victim regarding the operability of the vehicle, alleging that by questioning the victim, "evidence could have been adduced that the damage sustained by the vehicle was functional rather than disabling."[5] Palmer argued that the replacement value of the vehicle was an improper restitution amount because the car was still operable, and she had a video showing the victim driving the car. However, Palmer fails to explain the relevance of the operability of the vehicle to the economic loss suffered by the victim. Palmer cites no legal authority to support her contention that the operability of a vehicle is relevant to the computation of economic loss, and I could find none. "[W]hen the cost to repair the vehicle exceeds its value, then the owner's damages are limited to the value of the vehicle immediately prior to the accident." *Moore*, 1st Dist. Hamilton No. C-220421, 2023-Ohio-3318, at ¶ 12. Thus the economic loss is not dependent upon the operability of the vehicle. *See id.*

---

[4] The two issues raised in Palmer's second assignment of error were: "1. Whether the restitution award was improper because it exceeded the amount of economic loss suffered by Ms. Adams?" and "2. Whether the trial court erred in failing to discount the amount of restitution when it appears Ms. Adams' vehicle was still drivable?" The gist of the argument was that the trial court abused its discretion in determining restitution based on a generic blue book value and an unreliable repair estimate.

[5] Palmer no longer questioned whether the victim's insurance covered the loss. During oral argument, the appellee explained that the victim only had liability insurance on the vehicle, so her insurance company did not reimburse her for the loss.

**{¶46}** Relying on *Quijada*, an Arizona case, the majority opines that "due process requires that the defendant be afforded the opportunity to compel a witness's presence through the issuance of a subpoena." But *Quijada* made it clear that, "We do not hold today that defendants have an unconditional due-process right to question any victim who submits evidence or statements to support a restitution claim." *Quijada*, 246 Ariz. at 365, 439 P.3d 815. The *Quijada* court was justifiably concerned that an unconditional due-process right could be "converted into tools to subject victims to unnecessary and potentially injurious court proceedings." *Id.* at 366. Rather, the court held that due-process rights are only triggered when "events or circumstances call the veracity or accuracy of evidence concerning restitution into doubt, and the defendant cannot adequately challenge that evidence without questioning the victim in open court under oath." *Id.*

**{¶47}** In *Quijada*, the victim sought restitution for items that were stolen from her home. Her initial unsworn restitution statement reported a financial loss of $5,5530.75 for $500 in cash, two pairs of Manolo Blahnik footwear, an iPad, leather and ostrich phone cases, and the cost of installing and maintaining a home security system, which was almost one-third of the restitution amount. *Id.* at 360. No jewelry was reported stolen. Shortly thereafter, the victim submitted a second unsworn statement "which totaled $13,252.25, including a tennis bracelet worth 'about $6,000.' The updated statement referenced additional items, including several other jewelry pieces (gold necklace, amethyst and garnet beads, gold bracelet, diamond ring, Rolex watch), clothes, and electronics." *Id.* In a recorded statement to the police, the victim had previously reported that all of the jewelry stolen, including the tennis bracelet, contained fake stones, and she did not own a Rolex watch. *Id.* at 359-360.

{¶48} Six weeks after the initial statement, the victim provided a third statement seeking a restitution award in the amount of $45,320.18. *Id.* This request included:

> (in addition to the Manolo Blahnik footwear): (1) a tennis bracelet valued at $10,800; (2) a gold "goddess bangle" worth $4500; (3) a diamond ring valued at $2098; (4) a Tiffany & Co. necklace with a cross pendant valued at $2850; (5) a diamond "flower bracelet" valued at $1579; (6) a Movado men's watch valued at $450; (7) a "Bianca ring" with a sapphire and diamonds worth $8005; and (8) 16 bracelets with "14k gold clasps, beads, garnets, fresh water pearls [and] amethysts," worth $4400. The victim also submitted invoices for a portable scanner, phone and tablet cases, an iPad, and certain clothing. To account for the value of the jewelry listed in the statement, the victim relied on printouts from internet catalogs depicting pieces she believed were similar or the "closest [she] could get" to the jewelry she claimed had been stolen. Many of the printouts also contained her handwritten annotations describing the differences, in her opinion, between the nature and value of her pieces of jewelry and the jewelry listed in the printout. In the July 15 statement, the victim did not claim the missing fake jewelry she identified in the police interview.

*Id.* at 360-361.

{¶49} Before a scheduled hearing, the state reported that "six pieces of jewelry, of unknown value, remained in police custody." *Quijada*, 246 Ariz. at 362, 439 P.3d 815. At the hearing, the victim's former husband testified that he had never seen the

expensive jewelry and shoes, and that the victim was a "liar." *Id.* "He also testified that he purchased a Tiffany & Co. necklace with a cross pendant for the victim, to replace one she previously lost, while they were on the vacation when the burglaries occurred." *Id.* Additionally, the prosecutor, who could not subpoena the victim because her whereabouts were unknown, also expressed " 'serious misgivings' about the accuracy of the victim's restitution claim." *Id.* "The prosecutor stated he believed the victim needed to verify her claims to ensure the court had 'correct' and 'true' information.' " *Id.* at 363. The state moved to subpoena the victim, but the trial court determined a restitution amount without hearing from the victim. *Id.*

{¶50} Under these specific facts and circumstances, the court observed that the inability to question the victim denied Quijada the opportunity to effectively challenge "the veracity of the victim's restitution statements." *Id.* at 365. "Thus, not only was the victim the only individual who could explain the discrepancies between the third restitution statement and her previous statements, she alone could substantiate the values of what she claimed was missing." *Id.*

{¶51} That is not the situation here. The victim's veracity was never questioned by Palmer. Palmer admitted that she damaged the victim's car and was obligated to pay restitution to the victim. As previously discussed, Palmer's sole reason to question the victim was to determine whether the car was operable, which was not relevant to the restitution amount. Moreover, Palmer had taken a video showing that the car was operable. Palmer could have submitted the video to the court without questioning the victim. Thus, the majority's discussion of *Quijada* is inapposite and does not apply to the facts and legal arguments made in this case.

**{¶52}** Moreover, the majority's analysis is nonbinding dicta. Courts have defined dicta as "statements made by a court in an opinion that are not necessary for the resolution of the issues." (Citations omitted.) *Gissiner v. Cincinnati*, 1st Dist. Hamilton No. C-070536, 2008-Ohio-3161, ¶ 15. And "where a case is decided on one issue, and dicta pertaining to a separate and distinct issue might be found in the rationale of the case, the court has not decided the matter on the basis of the issue mentioned in dicta." *Westhoven v. Snyder*, 40 Ohio App.2d 91, 94, 318 N.E.2d 167 (1973).

**{¶53}** For these reasons, I respectfully concur in part and dissent in part.

Please note:

The court has recorded its own entry on the date of the release of this opinion.